[994 NYS2d 827]

WRG Acquisition, LLC, Petitioner, v Andrew Strasser, Respondent.

District Court of Nassau County, First District, September 30, 2014

## APPEARANCES OF COUNSEL

*David W. Graber* for petitioner.

*Nassau/Suffolk Law Services* (*Jane Reinhardt* of counsel) for respondent.

## OPINION OF THE COURT

ERIC BJORNEBY, J.

For the reasons set forth below, the petition is granted and the petitioner is awarded a judgment of possession and a warrant of eviction, with a stay of execution through October 31, 2014.

This holdover proceeding was commenced in April 2013 to evict the respondent, Andrew Strasser, from 840 Shore Road, apartment 4G, Long Beach, New York. The premises are rent stabilized and governed by the provisions of the Emergency Tenant Protection Act of 1974 (ETPA) (McKinney's Uncons Laws of NY § 8621 *et seq.* [L 1974, ch 576, sec 4, § 1 *et seq.*]). At trial, the petitioner's direct case was stipulated to by the re-

spondent and testimony proceeded on respondent's claim to succession rights under the ETPA. The burden of proving such entitlement is on the respondent. (*See 68-74 Thompson Realty, LLC v McNally,* 71 AD3d 411 [2010].) Some understanding of the history of the parties as well as the rules and regulations regarding rent-stabilized housing is necessary to the court's determination in this matter.

Respondent is a retired stockbroker. He claims to have lived in the subject unit since 2006 when he moved in with his sister, Elizabeth Solosy, the tenant of record. He testified that he moved in at her request, as a live-in aide, because at 80+ years of age she could no longer care for herself. Mrs. Solosy renewed her lease several times between then and 2012 but never made the required disclosure of her brother's presence or income on the renewal forms for fear that it would increase her rent. He further alleges that, at his sister's request, he used another address, 719 East Park Avenue, Long Beach, New York and had all mail sent there. He also listed that other address for bank account, car loan, insurance, income tax and motor vehicle registration purposes, again, at his sister's request. From the outset of the trial both the respondent and his counsel repeatedly urged that this deception was harmless because he resided there as a live-in aide (a term of art in subsidized housing parlance) and that disclosure of his presence therefore would not have affected her rent. It is not disputed that Mrs. Solosy never disclosed respondent's presence in the apartment to the appropriate housing authorities, though required by the applicable rules and regulations to do so.

Respondent offered the testimony of numerous witnesses including neighbors, family friends and relatives who testified that respondent lived in the apartment with his sister since 2006. They claimed to have seen him in the subject apartment, with his sister, on various occasions as well as in the neighborhood. In rebuttal, petitioner called two witnesses, Michelle Bieberman, who testified that she inspected the apartment in November 2010, as an employee of the managing agent, and that respondent was present but represented that he did not live there. Petitioner's second rebuttal witness was Robert Raphael, a member of petitioner, who testified that he visited the apartment on three separate occasions in 2011 and 2012 and conducted an inspection. He looked at the rooms, including the small room off the kitchen where respondent claims to have resided and testified that he observed no clothing, toiletries or

personal effects to suggest that a male lived in the apartment with Mrs. Solosy. In view of the conflicting evidence, the court finds that the respondent has not met his burden to establish the necessary two-year residence. In any event, even if the court were to find that the two-year residence requirement was met, this would be insufficient to establish his claim to succession rights as will be further discussed below.

In 2012 hurricane Sandy struck and the building was evacuated for a time. After a few weeks, Mrs. Solosy determined that she would not return to her apartment and moved to Oklahoma to reside permanently with her daughter and her family. Mr. Strasser returned to the apartment and continues to reside there. Mr. Strasser claims to have entered into negotiations with the petitioner, on behalf of his sister, to obtain a cash payment for her in exchange for her surrendering the apartment in a vacant state. He claims that a $20,000 offer was rejected by his sister and that he was holding out for a $50,000 payment. He testified that in the end Mrs. Solosy wanted to be done with the matter and on her own accepted a $20,000 offer but that, against her wishes, he persisted in his demand for $50,000, utilizing this succession claim as leverage. In the end, she surrendered the apartment but received no payment because she could not deliver the apartment vacant since respondent refused to vacate it.

The requirement that all adult members of the household be disclosed, together with their income, insures that the total household income is correctly reported so that the correct amount of the rent can be computed. Supplying all such information regarding adult residents allows HUD to detect unreported income and correct the rent calculation. As noted by the Court of Appeals in *Matter of Evans v Franco* (93 NY2d 823, 825 [1999]):

> "On this record, it is clear that petitioner was never certified by the NYCHA as a family member. Given the 13 unequivocal annual statements by the deceased that she lived in the apartment alone, there is no basis on this record to conclude that petitioner is a family member or that a hearing is necessary to confirm his status. To permit petitioner to claim status as a surviving family member would be to open the door to possible fraudulent claims and to a wholesale disregard of the intent of the subsidy program."

The court is required to enforce the rules and regulations regarding federally subsidized housing so as to insure that such housing is only provided to those who meet "specified eligibility requirements." (*Matter of Schorr v New York City Dept. of Hous. Preserv. & Dev.*, 10 NY3d 776, 779 [2008].) The goal of such rules and requirements is to strike "a balance among various competing policies, including the interests of those on the long waiting lists for housing as well as those family members who have actually lived with a tenant and whose income was properly reported during such time so as to arrive at a fairly allotted rent." (*Matter of Meyers v New York State Div. of Hous. & Community Renewal*, 68 AD3d 1518, 1520 [2009].) To ignore the mandate that all occupants be listed on each annual recertification so that petitioner may have a clear and accurate understanding of the household income would simply gut the deterrent value of the rules requiring such disclosure. (*Matter of Perez v Rhea*, 20 NY3d 399 [2013].) Rules without consequences for their violation only invite abuse and noncompliance. (*Matter of Auguste v Wambua*, 107 AD3d 607 [2013]; *Matter of Cruz v New York City Hous. Auth.*, 106 AD3d 631 [2013].)

9 NYCRR 2503.5 (d) (1) regarding succession rights to rent-stabilized apartments provides:

> "Unless otherwise prohibited by occupancy restrictions based upon income limitations pursuant to Federal, State or local law, regulations or other requirements of governmental agencies, if an offer is made to the tenant pursuant to the provisions of subdivision (a) of this section, and such tenant has permanently vacated the housing accommodation, any member of such tenant's family, as defined in section 2500.2 (n) of this Title, *who has resided with the tenant in the housing accommodation as a primary residence* for a period of no less than two years, or where such person is a 'senior citizen,' or a 'disabled person' as defined in paragraph (4) of this subdivision, for a period of no less than one year, immediately prior to the permanent vacating of the housing accommodation by the tenant, or from the inception of the tenancy or commencement of the relationship, if for less than such periods, shall be entitled to be named as a tenant on the renewal lease." (Emphasis added.)

As noted above, respondent claims that his omission from the lease and the family composition certifications was harmless in

that he resided there as a live-in aide to care for his sister. Counsel for the respondent in her first posttrial submission concedes that "[t]he live-in aide does not sign the lease and does not qualify for continued occupancy as a remaining member of the tenant family under HUD law. 24 CFR. § 5.609 (c) (5)." This is true, and for this reason, the live-in aide's income is not included in the tenant's rent calculation.

24 CFR 5.403 defines a live-in aide as follows:

"Live-in aide means a person who resides with one or more elderly persons, or near-elderly persons, or persons with disabilities, and who:

"(1) Is determined to be essential to the care and well-being of the persons;

"(2) Is not obligated for the support of the persons; and

"(3) Would not be living in the unit except to provide the necessary supportive services."

The problem with the respondent's position is that the above cited regulation has, in effect, two requirements for succession rights: (a) that he resided there with the tenant for a period of two years or more and (b) that the premises served as his primary residence. In this regard he takes two completely different and diametrically opposed positions at the same time in this litigation. On the one hand, he claims there was no fraud on the housing authority as a result of their admitted deception because he was a live-in aide whose income would not have been included in his sister's rent calculation anyway. This he testified to from the beginning and his counsel has repeatedly urged this position on the court. On the other hand, as 9 NYCRR 2503.5 (d) (1) makes clear, succession rights only belong to a co-resident who has lived with the tenant at the premises *as a primary residence.*" As counsel conceded in her first posttrial submission, a live-in aide cannot claim succession rights. One cannot be a live-in aide for one purpose (avoiding the reporting of additional household income and a resulting increase in rent) and a permanent resident for the purpose of obtaining succession rights. (*See Valley Dream Hous. Co., Inc. v Schmidt,* 16 Misc 3d 1138[A], 2007 NY Slip Op 51747[U] [2007].)

57 NY Jurisprudence 2d, Estoppel, Ratification, and Waiver § 17 puts it this way:

"The doctrine of judicial estoppel or the doctrine of inconsistent positions precludes a party who assumed a certain position in a prior legal proceeding

and who secured a judgment in his favor from assuming a contrary position in another action simply because his interests have changed. The doctrine is intended to prevent abuses of the judicial system by which a party obtains relief by maintaining one position and later, in a different action, hold a contrary position. Judicial estoppel precludes a party from making a claim that is inconsistent with a position that he successfully maintained in a prior adjudicatory proceeding. The preclusive effect of judicial estoppel is the same whether the prior proceeding was administrative or judicial. The doctrine is inapplicable where no formal grant of relief was obtained nor is the doctrine applicable where a party's prior participation in a legal proceeding was as a witness and not as a party.

"Another form of judicial estoppel precludes a party from inequitably adopting a position directly contrary to or inconsistent with an earlier position in the same proceeding."

█ Whether it be called judicial estoppel or estoppel against inconsistent positions, one cannot for the purpose of avoiding the consequences of a fraud finding, claim to have been merely a live-in aide whose income was not includable in the rent calculation, and at the same time, for the purposes of obtaining succession rights, claim to have been a permanent resident for the same period of time. (*American Assn. of Bioanalysts v New York State Dept. of Health*, 75 AD3d 939 [2010]; *William Tell Servs., LLC v Capital Fin. Planning, LLC*, 2013 NY Slip Op 32658[U] [2013]; *Nestor v Britt*, 270 AD2d 192 [2000]; *Maas v Cornell Univ.*, 94 NY2d 87 [1999].)

Based upon the respondent's own sworn testimony and post-trial brief, the court finds that even if he did reside with the tenant for the required two years, he did so as a live-in aide and not as a permanent resident. He is therefore not entitled to claim succession rights pursuant to 9 NYCRR 2503.5 (d) (1).

For the above reasons, the petition is granted and the petitioner is awarded a judgment of possession and a warrant of eviction, which shall be stayed through October 31, 2014.